UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

WINPROVIT –SOLUÇÕES INTELLIGENTES S.A.,                 23 Civ. 11155 (PKC)

       Plaintiff,

v.                                                      OPINION AND ORDER

Z & A INFOTEK CORP. a/k/a Z AND A INFOTEK
CORPORATION a/k/a Z & A INFOTEK, INC.
d/b/a ZEN & ART,

       Defendant.
-----------------------------------------------------------

CASTEL, Senior District Judge

  In this action invoking the Court's diversity jurisdiction, plaintiff Winprovit-Soluções Inteligentes S.A. ("Winprovit") seeks to recover for unpaid services delivered pursuant to a written agreement with Z & A Infotek Corp., a/k/a Z and A Infotek Corporation, a/k/a Z & A Infotek, Inc., d/b/a Zen & Art ("Infotek"). The discovery period has concluded and Winprovit now moves for summary judgment.

  For reasons that will be explained, the Court will grant summary judgment in favor of Winprovit.

SUMMARY JUDGMENT STANDARD

  Under Rule 56(a), Fed. R. Civ. P., summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To defeat a motion for summary judgment, the nonmoving party must set forth specific facts that show there is a genuine issue of material fact to be tried. Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). The moving party is entitled to judgment as a matter of law when, after adequate time for discovery, the nonmoving party fails

to make a sufficient showing on an essential element of their claim, to which it has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the court is "required to view the evidence in the light most favorable to the party opposing summary judgment" and to draw all reasonable inferences in favor of the nonmoving party.  Hayes v. Dahlke, 976 F.3d 259, 267 (2d Cir. 1996).  In ruling on the motion, the district court "may rely on 'any material that would be admissible or usable at trial.'"  Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1997)).  To overcome a motion for summary judgment, "a party may not rely on mere speculation or conjecture" and "mere conclusory allegations or denials cannot themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

DISCUSSION

The Court relies on the undisputed facts of record. It draws all reasonable inferences in favor of the non-movant, Infotek.[1]

The agreement between the parties is styled a "Work Order" effective April 18, 2022.  (ECF 48-1.)  It was executed by Infotek and Winprovit respectively on May 13 and June 6 of 2022. (Id. at 10.)  The Work Order incorporates a Master Services Agreement ("MSA") and provides that the terms of the Work Order control over those of the MSA.  (Id. at 2.)  The project for which Winprovit's services were engaged is described as the provision of IT services by

---

[1] References to a party's Rule 56.1 Statement is intended to refer to the evidence cited in the Statement.  The mere assertion that a fact is disputed is not binding on the Court if the facts of record reveal otherwise.  Citation to evidence does not imply that it is the only evidence in support of the point.

2

Winprovit to Altice. (Id. ¶ 1.) For the purposes of the Work Order, Altice USA ("Altice") was Infotek's customer, although Winprovit had previously worked with Altice. (Shetty Decl. ¶¶ 5-6.) The Work Order provides that the "Vendor [i.e. Winprovit] shall perform, on a Fixed Cost for Fixed Capacity basis" for the project's activities. (Id. ¶ 1.) It provides that "[p]ayment shall be made as per terms set forth in the Agreement in 24 equal installments," starting January 1, 2022, and ending December 31, 2023, at the fixed Milestone Amount of $59,134. (Id. ¶ 3.1.)

There is no dispute that Infotek fully paid the first 13 installments, i.e. through January 19, 2023, but ceased paying anything thereafter. The balance of the eleven unpaid installments equals $650,470.

Infotek's CEO Sandesh Shetty asserts that he learned that in July 2023 a co-founder of Altice, Armando Pereira, was arrested for corruption, money laundering and tax fraud. (Shetty Decl. ¶18.) He also states that he learned that Hernâni Vaz Antunes was arrested and that he was a "leading member of Winprovit" and a "right-hand" man to the head of Altice. (Id. ¶ 19.) He states that he knew that Altice had "paused payments under its contracts while internal investigations were ongoing." (Id. ¶ 23.) According to Shetty, "as a result I knew that Z&A Infotek's contract with Altice and Winprovit was in jeopardy, and I needed to recuperate [sic] what I could on the contract since Z&A Infotek made zero margins on the contract." (Id. ¶ 24.) Shetty states that he was influenced to take on Winprovit to service Altice in the belief that he would obtain more business from Altice, but he has not received any further business from Altice. (Id. ¶ 28.) Shetty expresses regret at doing business with Winprovit insinuating that the Winprovit employees with whom dealt "concealed its relationship with Altice for fear of the conspiracy and kickbacks were going to be revealed." (Id. ¶ 37.) In an interrogatory response in this action, Infotek states that it "paused its payments" to Winprovit because of the Altice

3

internal investigation.  (ECF 48-3 at 9.)  As noted, it is not disputed that the last eleven payments were never made.

Under a Center of Gravity Analysis, New York Law Governs the Contract

The choice of law rules of the forum state, New York, govern in this diversity action.  Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496–97 (1941).  Neither party claims that there is a governing choice of law provision in any of the controlling contractual documents.

"[T]he first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the laws invoked by the parties."  Harris v. Provident Life and Accident Insurance Co., 310 F.3d 73, 81 (2d Cir. 2002) (citing In re Allstate Insurance Co., 81 N.Y.2d 219, 223 (1993)).  Winprovit urges that New York law ought to apply to the dispute and Infotek urges that New Jersey law ought to apply.  Infotek does not identify any issue on which the law of contract formation, interpretation or breach would differ between New York and New Jersey.  Infotek does assert that New Jersey law affords wider discretion to the Court on whether to impose prejudgment interest and if so at what rate.  The Court assumes without deciding that this is a principle of substantive law.

If a conflict is found in substantive law, then, in the absence of an express choice of law provision, New York would apply a "center of gravity" or "grouping of the contacts" approach.  Tri-State Employment Servs., Inc. v. Mountbatten Surety Co., Inc., 295 F.3d 256, 260-61 (2d Cir.2002) (citing In re Allstate Ins. Co., 81 N.Y.2d at 227).  "[C]ourts may consider a variety of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties."  Tri-State, 295 F.3d at 261.

4

Winprovit is organized under the laws of the Republic of Portugal, with its principal place of business in Porto, Portugal. (56.1 ¶ 1.) Defendant is a New Jersey corporation with its principal place of business located in Parsippany, New Jersey. (Resp to 56.1 ¶ 2.) The place where the contract was principally to be performed was an Altice location in Bethpage, New York. (ECF 48-1 ¶ 1.9: "WINPROVIT shall perform its services from Customer office at Bethpage, NY or any other Customer approved Onshore, Offshore, or Nearshore Locations.") The Work Order was a service contract and the services to be performed by Winprovit for Altice at the direction of Infotek were focused on New York. The Court concludes that the center of gravity for this Work Order was New York and that New York law governs.

Winprovit Has Proven its Breach of Contract Claim

Under New York law, "[t]he elements of a breach of contract claim are formation of a contract between the parties, performance by the plaintiff, the defendant's failure to perform, and resulting damage." Flomenbaum v. New York University, 71 A.D.3d 80, 91 (1st Dep't 2009), aff'd, 14 N.Y.3d 901 (2010).

Winprovit has come forward with proof of the existence of a valid enforceable contract, i.e. the Work Order duly executed by both Winprovit and Infotek. Infotek has not denied that it agreed to the terms of the Work Order. (Shetty Decl. ¶ 11: "I accepted the terms of the contract because I was convinced by Winprovit that Altice and Winprovit had a close relationship, and I was promised bigger long-term projects with Altice.")

Infotek half-heartedly asserts that it was duped into doing business with Winprovit by the belief that it would result in more Altice business in the future and, further, that Winprovit knew that this would not be likely because of its knowledge of the concealed criminal activity. (Id. ¶¶ 7, 12, 37; ECF 20 at Thirteenth Affirmative Defense: "Plaintiff's claims are

5

barred because Defendant was fraudulently induced to sign and enter into contractual agreement with Plaintiff.")  Infotek has not come forward with a time, place, speaker or circumstance for its claim of having been deceived or duped except in a vague and cursory fashion.  No "bigger long-term projects" with non-party Altice are described.  The summary judgment record does not distinguish between Shetty's subjective beliefs, statements made by non-party Altice and statements, if any, made by Winprovit.  Infotek's insinuations standing alone could not support a finding in its favor by a reasonable fact finder.

        Winprovit has proven that it fully performed under the Work Order.  Indeed, Infotek paid thirteen monthly installments through January 2023.  Shetty Decl. ¶ 17 ("Once the payments were received from Altice, I thereafter would routinely check the number of hours incurred by Winprovit on the contract and remit a payment accordingly.")

        Winprovit has come forward with evidence that it continued to perform throughout 2023 despite nonpayment, absorbing the financial burden to avoid disrupting the services it was contractually obligated to provide to Defendant pursuant to the terms of the Agreement.  At no point did Defendant terminate the Agreement or otherwise take formal steps to cease Winprovit's performance pursuant to its terms.  (Dos Santos Lopes Decl. ¶ 9.)  Winprovit has also come forward with the eleven unpaid invoices that it transmitted to Infotek at the time they were due.  (ECF 48-5.)

        Infotek now makes vague claims that "Winprovit did not provide sufficient documentation to ever contemporaneously confirm the hours worked" and "[i]nstead, . . . only ever provided self-serving billing records to support its claim."  (Shetty Decl. ¶17.)  No contemporaneous notice of breach was transmitted by Infotek.  In its answer to an interrogatory,

indeed, Infotek now faults Winprovit for continuing to work and not walking off the job when Infotek stop paying:

> According to Plaintiff, it was aware as early as June 2023 that Defendant was in arrears of payments that Plaintiff contends were due and owing. At that point, as admitted, Plaintiff made a conscious decision to continue providing services without any assurance of payment under the [Work Order].

(ECF 48-3 at 9.)

In the same interrogatory response, Infotek described its decision to "pause[] its payments" as attributable to an internal investigation that Altice was conducting, and not to any performance failures by Winprovit:

> Furthermore, Altice is owned by Hernani Vaz Antunes who was arrested in July 2023 for money laundering and tax evasion. As a result, Defendant paused its payments to Plaintiff because Altice was conducting an internal investigation into Plaintiff and the additional companies owned by Mr. Vaz Antunes. Following the investigation, Altice terminated its relationship with Plaintiff.

(Id.)

Winprovit has proven that Infotek's permanent "pause[]" in its payments was a failure to perform by Infotek and not by Winprovit. The circumstance that Altice was conducting an internal investigation of both one of its officials and Winprovit simply does not provide a defense to payment under the Work Order.

Winprovit has also proven its resulting damages. The schedule of payments in the Work Order makes it a simple matter to calculate that the eleven unpaid installments total $650,470.

The Court concludes that no reasonable fact finder could on this summary judgment record, developed after full and fair discovery, find in Infotek's favor. Accordingly, Winprovit's motion for summary judgment against Infotek will be granted.

<u>Winprovit is Entitled to Pre-Judgment Interest</u>

Because the sums due and owing are liquidated amounts, the imposition of pre-judgment interest is appropriate under New York law.  CPLR § 5001.  Winprovit has submitted a chart demonstrating the number of days that each of the eleven installments has been outstanding from the due date through May 5, 2025.  (ECF 48-4.)  At 9% simple interest, CPLR § 5004, the sum is calculated at $94,199.14.  (<u>Id.</u>)  To facilitate the prompt entry of final judgment and because bringing the interest calculation down to the present day would require eleven intermediate calculations, the Court will impose pre-judgment interest only through May 5, 2025.

CONCLUSION

Winprovit's motion for summary judgment is GRANTED.  The Clerk shall enter Final Judgment in favor of Winprovit on its claim of breach of contract against Infotek in the amount of $650,470, plus-prejudgment interest in the amount of $94,199.14, for a total of $744,669.14.  The Clerk is requested to terminate the motion at ECF 47 and close the case.

SO ORDERED.

P. Kevin Castel<br>
United States District Judge

Dated: New York, New York
      July 10, 2025

8